**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

MICHAEL KANE,

                      Plaintiff,

      - v -                                                     Civ. No. 6:16-CV-724
                                                                          (DJS)[1]

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF STEVEN R. DOLSON<br>*Attorney for Plaintiff*<br>126 North Salina Street, Suite 3B<br>Syracuse, New York 13202 | STEVEN R. DOLSON, ESQ. |
| SOCIAL SECURITY ADMINISTRATION<br>*Attorney for Defendant*<br>Office of Regional General Counsel<br>Region II<br>26 Federal Plaza – Room 3904<br>New York, New York 10278 | MICHELLE L. CHRIST, ESQ. |

**DANIEL J. STEWART**
**United States Magistrate Judge**

## MEMORANDUM-DECISION and ORDER

In this action, Plaintiff Michael Kane moves, pursuant to 42 U.S.C. § 405(g), for review of a decision by the Acting Commissioner of Social Security denying his application for Disability Insurance Benefits ("DIB") and Period of Disability ("POD").[2] Based upon the following

---

[1] Upon the Plaintiff's consent, the United States's general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* Dkt. No. 6 & General Order 18.

[2] This case has proceeded in accordance with General Order 18, which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed Briefs, though oral argument was not heard. Dkt. Nos. 11, Pl.'s Br., & 16, Def.'s Br.

discussion, the Acting Commissioner's decision denying Social Security benefits is **affirmed**.

## I. BACKGROUND

Kane, born on November 21, 1969, filed an application for DIB and POD on November 25, 2013, claiming an inability to work as of March 29, 2012, due to a variety of ailments, including lumbar spine impairment, ruptured discs, degenerative arthritis, and bilateral lower extremity neuropathy. Dkt. No. 10, Admin. Tr. [hereinafter "Tr."] at pp. 15, 22, 57, 80, 153-55, & 181. Kane graduated high school and his past work includes working with individuals, aged twelve through eighteen, as a youth group worker. *Id*. at pp. 16, 22, & 58-59. On March 29, 2012, the alleged onset disability date, Plaintiff sustained an injury to his back at work while breaking up a fight between the youths that he watched. *Id*. at p. 294. Prior to this incident, records reflect that Kane had prior history of chronic back pain treated with opiates. *Id*. at p. 295.

Kane's disability application was denied on initial review. *Id*. at pp. 79, 80-88, & 91-102. On January 22, 2015, a Hearing was held before Administrative Law Judge ("ALJ") Rosanne M. Dummer wherein testimony was procured from Kane, who was accompanied by an attorney, and from Mark A. Pinti, a vocational expert ("VE").[3] *Id*. at pp. 53-78. On April 3, 2015, ALJ Dummer issued an unfavorable decision finding that Kane was not disabled. *Id*. at pp. 9-27. On May 25, 2016, the Appeals Council concluded there was no basis to review the ALJ's decision, thus rendering the ALJ's decision the final determination of the Acting Commissioner. *Id*. at pp. 1–6. Exhausting all of his options for review through the Social Security Administration's tribunals, Plaintiff now brings this appeal.

---

[3] Subsequent to the Hearing, Mr. Pinti was further queried by interrogatory. Tr. at pp. 209-11 & 219-23.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), the proper standard of review for this Court is not to employ a *de novo* review, but rather to discern whether substantial evidence supports the Commissioner's findings and that the correct legal standards have been applied. *See Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *Urtz v. Callahan*, 965 F. Supp. 324, 325–26 (N.D.N.Y. 1997) (citing, *inter alia*, *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). Succinctly defined, substantial evidence is "more than a mere scintilla" of evidence scattered throughout the administrative record; rather, it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938); *see also Williams ex. rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). "To determine on appeal whether an [Administrative Law Judge's] findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex. rel. Williams v. Bowen*, 859 F.2d at 258.

The ALJ must set forth the crucial factors supporting the decision with sufficient specificity. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). Where the ALJ's findings are supported by substantial evidence, the court may not interject its interpretation of the administrative record. *Williams ex rel. Williams v. Bowen*, 859 F.2d at 258; 42 U.S.C. § 405(g). However, where the weight of the evidence does not meet the requirement for substantial evidence or a reasonable basis for doubt exists as to whether correct legal principles were applied, the ALJ's decision may not be affirmed. *Johnson v. Bowen*, 817 F.2d at 986.

## B. Determination of Disability

To be considered disabled within the meaning of the Social Security Act, a plaintiff must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore, the claimant's physical or mental impairments must be of such severity as to prevent engagement in any kind of substantial gainful work which exists in the national economy. *Id.* at § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner follows a five-step analysis set forth in the Social Security Administration Regulations. 20 C.F.R. § 404.1520. At Step One, the Commissioner "considers whether the claimant is currently engaged in gainful activity." *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). If the claimant is engaged in substantial gainful activity, he or she is not disabled and the inquiry ends. 20 C.F.R. § 404.1520(b). If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to Step Two and assesses whether the claimant suffers from a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. *Id.* at § 404.1520(c). If the claimant suffers from a severe impairment, the Commissioner considers at Step Three whether such impairment(s) meets or equals an impairment listed in Appendix 1, in Part 404, Subpart P of the Regulations. *Id.* at § 404.1520(d). The Commissioner makes this assessment without considering vocational factors such as age, education, and work experience. *Berry v. Schweiker*, 675 F.2d at 467. Where the claimant has such an impairment the inquiry ceases as he or she is presumed to be disabled and unable to perform substantial gainful activity. *Id.* If the claimant's impairment(s) does not meet or equal the

listed impairments, the Commissioner proceeds to Step Four and considers whether the claimant has the residual functional capacity ("RFC")[4] to perform his or her past relevant work despite the existence of severe impairments. 20 C.F.R. § 404.1520(e). If the claimant cannot perform his or her past work, then at Step Five, the Commissioner considers whether the claimant can perform any other work available in the national economy. *Berry v. Schweiker*, 675 F.2d at 467; 20 C.F.R. § 404.1520(f).

Initially, the burden of proof lies with the claimant to show that his or her impairment(s) prevents a return to previous employment (Steps One through Four). *Berry v. Schweiker*, 675 F.2d at 467. If the claimant meets that burden, the burden then shifts to the Commissioner at Step Five to establish, with specific reference to medical evidence, that the claimant's physical and/or mental impairment(s) are not of such severity as to prevent him or her from performing work that is available within the national economy. *Id.*; 42 U.S.C. § 423(d)(2)(A); *see also White v. Sec'y of Health and Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990). In making this showing at Step Five, the claimant's RFC must be considered along with other vocational factors such as age, education, past work experience, and transferability of skills. 20 C.F.R. § 404.1520(f); *see also New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990).

### C. ALJ Dummer's Findings

As noted above, Kane and VE Pinti testified at the ALJ Hearing. Tr. at pp. 53-78. In addition to such testimony, the ALJ had Kane's medical records consisting of treatment reports and opinions from various treating and/or consulting physicians. *Id.* at pp. 228-398.

---

[4] "Residual functional capacity" is defined by the Regulations as follows: "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is what you can still do despite your limitations." 20 C.F.R. § 404.1545(a).

ALJ Dummer noted initially that, for DIB purposes, Kane met the insured status requirements of the Social Security Act through December 31, 2017. *Id*. at pp. 13 & 14. Using the five-step disability evaluation, ALJ Dummer found that: (1) Kane had not engaged in any substantial gainful activity since March 29, 2012, the alleged onset disability date; (2) he has a severe medically determinable impairment, namely degenerative disc disease; (3) his severe impairment does not meet nor medically equal any impairment listed in Appendix 1, Subpart P of Social Security Regulation No. 4; (4) he retains the RFC to perform a range of light work, as defined by the Regulations, with certain other restrictions, and, as such, he could return to his prior work as a youth group worker; and, in the alternative, (5) considering his age, education, work experience, RFC, and VE testimony, Kane could perform work available in the national economy and was therefore not disabled. *Id.* at pp. 14-24.

### D. Plaintiff's Contentions

In his Brief, Plaintiff primarily disputes the weight attributed to the assessment rendered by Eric C. Puestow, M.D., a medical expert, and argues that such opinion overly relies upon a known faulty objective medical test and that the opinions of Edward L. Mills, M.D., an independent medical examiner, and Tanya Perkins-Mwantuali, M.D., an agency consultive examiner, contradict such assessments. Because it appears that Plaintiff's general discontent centers around the ALJ's formulation of the RFC, and the weight given to certain medical opinions, I will focus my attention thereto.[5]

As noted above, the Commissioner assesses a claimant's RFC as a basis for determining the

---

[5] Although the Defendant explains the support for the ALJ's finding at Step Three, regarding the Listings, notwithstanding Plaintiff's discussion regarding evidence of radiculopathy, it does not appear that the Plaintiff's Brief is focused on an alleged error at that Step and therefore will not be discussed by the Court. *See generally* Pl.'s Br.

particular types of work the claimant may be able to do despite the existence of physical and/or mental impairments. *See* 20 C.F.R. § 404.1545(a); 20 C.F.R. Part 404, Subpart P, App. 2, § 200.00(c). In qualifying work in the national economy, the Regulations classify and define jobs according to their physical exertion requirements as sedentary, light, medium, heavy, and very heavy. 20 C.F.R. § 404.1567. In determining RFC, the ALJ can consider a variety of factors including a treating physician's or examining physician's observations of limitations, the plaintiff's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments even those not deemed severe. *Id*. at § 404.1545(a).

In accordance with the Regulations, every medical opinion, regardless of its source, is considered and weighed. 20 C.F.R. § 404.1527(c). In deciding what weight, if any, an ALJ should accord to medical opinions, he or she may consider a variety of factors including "[t]he duration of a patient-physician relationship, the reasoning accompanying the opinion, the opinion's consistency with other evidence, and the physician's specialization or lack thereof[.]" *See Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (discussing, *inter alia*, 20 C.F.R. § 404.1527). An ALJ may not "arbitrarily substitute his own judgment for competent medical opinion." *McBrayer v. Sec'y of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983); *see also Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). Where conflicts arise in the medical evidence, resolution of such is properly entrusted to the Commissioner. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

ALJ Dummer reviewed the medical record and opinion evidence and determined that Kane had the RFC

> to perform a range of light work as defined in 20 CFR 404.1567(b). [Kane] can lift/carry twenty pounds occasionally and ten pounds frequently; sit about eight of

> eight hours, up to four hours at a time; and stand/walk about six of eight hours, up to three hours at a time. He can occasionally climb ramp/stairs, balance, stoop, kneel, crouch, and crawl. He should avoid ladders, scaffolds, and unprotected heights. [Kane] can occasionally work around moving, mechanical parts and operate a motor vehicle. . . .

Tr. at pp. 15-22.

In rendering this RFC, the ALJ generally found that Plaintiff's allegations concerning the intensity, persistence, and limiting effects of his symptoms were "out of proportion" to the objective findings and were consistent with limitations established in the RFC. *Id*. at pp. 19-20. In support, the ALJ noted that Plaintiff received conservative treatment, consisting mostly of pain management once a month, has been noted to exaggerate symptoms, and his motivation to work is questionable. *Id*.

With regard to the opinion evidence in the record, the ALJ gave great weight to the Februray 2, 2015 responses provided by Eric C. Puestow, M.D., a medical expert, to the medical interrogatories posed by ALJ Dummer following the Hearing (*id*. at p. 21 (referencing *id*. at pp. 387-98)); little weight to the February 25, 2014 assessment rendered by State Agency Consultant Tanya Perkins-Mwantuali, M.D. (*id*. at p. 21 (referencing *id*. at pp. 303-08)); little weight to the opinion rendered by Kane's treating physician, Michael Abraham, M.D., on September 18, 2014, and to statements regarding a disability rating (*id*. at p. 21 (referencing *id*. at p. 335)); little weight to the opinion allegedly rendered by Dr. Ferraraccio following an independent medical exam ("IME")[6] conducted in November 2013 (*id*. at p. 20 (referencing *id*. at p. 358)); little weight to the opinion rendered by Timothy A. Failing, D.C., on August 31, 2012 (*id*. at p. 20 (referencing *id*. at p. 313)); and limited weight to the assessment rendered by Edward L. Mills, M.D., following an IME

---

[6] Throughout the treatment notes from Dr. Abraham, there are several references to IMEs conducted by Dr. Ferraraccio, possibly in conjunction with Plaintiff's workers' compensation case, as reported by Plaintiff. The actual IMEs are not included in the record. *See* Tr. at p. 18 (reciting the treatment notes from Dr. Abraham and further noting that the specifically referenced IME is not included in the record evidence).

conducted on October 8, 2014 (*id*. at p. 21 (referencing *id*. at pp. 328-34)).

Subsequent to the Hearing, ALJ Dummer submitted a Medical Interrogatory to Dr. Puestow. Tr. at pp. 373-86. After receiving Dr. Puestow's responses, *id*. at pp. 387-98, Plaintiff's counsel was given an opportunity to review the responses and request a supplemental hearing, *id*. at pp. 209-11; Plaintiff's counsel did not respond, *id*. at p. 12. According to the Medical Interrogatory responses, Dr. Puestow assessed that Kane suffered from lumbar degenerative disc disease, but that Kane's allegations of pain and dysfunction exceed what would be anticipated in light of the objective information contained in the record. *Id*. at p. 387. In response to questions regarding the supportability in the record of other medical opinions, Dr. Puestow opined that: 1) the statements rendered by Dr. Abraham regarding disability for worker's compensation and the terms used by him were not part of the SSA program; 2) the findings assessed by Dr. Perkins-Mwantuali following the consultive examination are "not consistent with overall evaluation" and the work limitations are not "well defined;" 3) he concurred with the assessment rendered by the Independent Medical Examiner Dr. Mills that Kane could perform light/medium work, but there was no objective basis to preclude all climbing and kneeling. *Id*. at p. 389.

In addition to responses to the Medical Interrogatory, Dr. Puestow completed an assessment of Kane's ability to perform work-related activities. *Id*. at pp. 390-95. Therein, Dr. Puestow indicated that Kane could 1) lift/carry up to ten pounds frequently, up to twenty pounds occasionally, but never more than twenty pounds; 2) sit for a total of eight hours, for four hours at a time without interruption; 3) stand/walk for a total of six hours, for three hours at a time without interruption; 4) never climb ladders or scaffolds or be exposed to unprotected heights due to narcotics; 5) occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl; and 6)

occasionally be exposed to moving mechanical parts and operating a motor vehicles due to narcotics. *Id*.

It is Plaintiff's contention that the opinion rendered by Dr. Puestow should not have been afforded great weight as it "relies solely on a snapshot [electromyogram] EMG rather than all of the objective medical evidence." Pl.'s Br. at p. 5. An electromyogram is "a test in which the electrical activity in muscle is analyzed after being amplified, displayed, and recorded." AM. MEDICAL ASSOC. ENCYCLOPEDIA OF MEDICINE 399 (Charles B. Clayman, M.D., ed.) (Random House 1989). On October 18, 2012, EMG testing showed that the claimant had "[e]lectrophysiological evidence of active nerve root compression at the levels of L2, L3 and S1 bilaterally," however, all nerve conduction studies were within normal limits. Tr. at p. 274. EMG and nerve conduction studies conducted on April 29, 2014, were within normal limits. *Id*. at pp. 340-42.

In assessing whether the severity of Plaintiff's impairment met Listing 1.04, Dr. Puestow stated in the negative and cited the April 2014 EMG and nerve conduction studies normal results in support. But he did not rely <u>solely</u> on those tests, as he also noted that motor and sensory testing on October 8, 2014 (which was performed by Dr. Mills), were normal; there was no evidence of muscle atrophy; and limitation of motion is not accompanied by spasm and is not credible. *Id*. at p. 389. Additionally, Dr. Puestow observed that there was evidence of "magnified illness behavior and narcotic-seeking." *Id*. In reviewing Dr. Puestow's responses, I cannot agree with Plaintiff's assessment that he solely relied on a faulty objective test (EMG) conducted in 2014. Indeed, it is clear that Dr. Puestow not only reviewed the entire medical record, as he stated, but he also paid particular attention to those medical records notated within the questions posed.

I also find that other evidence in the record is consistent with Dr. Puestow's assessments, and

the ALJ was entitled to rely upon his expert medical opinion in formulating Kane's RFC. Although, as acknowledged by the ALJ, the Plaintiff has a serious medical condition, he has received conservative treatment for pain management only. Although surgery had been recommended, Plaintiff refused and similarly refused or rebuffed other treatment, such as epidural injections (preferring only narcotic prescriptions), and physical therapy and chiropractic care, claiming that both options neither worsened nor changed his pain. *Id*. at pp. 237, 254, 273, & 289. Indeed, Plaintiff's own treating physician, Dr. Abraham, indicated that Plaintiff's complaints did not seem to be supported by objective findings and, out of concern with his apparent drug-seeking behavior, Dr. Abraham cautioned Plaintiff about long term use of narcotics and counseled him about addiction. *Id*. at pp. 292 (Dr. Abraham treatment note, dated April 18, 2012, indicating that the MRI and x-ray "did not correlate with the amount of pain [Kane] describes") & 289 (Dr. Abraham treatment note, dated July 24, 2012, observing that Kane relayed an "implausible description" of what the neurosurgeon told him, seemed to be "exaggerating symptoms" in the exam room, but was observed upon leaving the office to "not look like he was in as much pain as he was trying to convey when in the office - but he got the [prescription] for percocet he wanted!").

ALJ Dummer properly considered, and applied appropriate weight to, the expert medical opinion rendered by Dr. Puestow, whose credentials are uncontested. Per the Regulations, State agency medical consultants are "highly qualified" individuals "who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(e)(2)(i). Insofar as such opinions are supported by the medical evidence, they may override a treating source's opinion. *See* Pl.'s Br. at p. 4 (citing, *inter alia*, *Henry v. Astrue*, 32 F. Supp. 3d 170, 181-82 (N.D.N.Y. 2012)).

The ALJ is entitled to weigh the evidence before her and determine and accept findings that

are consistent with the evidence in the record. Because the ALJ properly considered the entire medical record, properly explained the weight she afforded to each medical opinion, and because her decision is supported by substantial evidence, I find no basis for reversing and remanding the final decision of the Acting Commissioner.

### III. CONCLUSION

In light of the above, I find that as to the arguments raised by Plaintiff on appeal, the ALJ did not commit any legal errors and her findings are supported by substantial evidence in the record. As such, it is hereby

**ORDERED**, that the Acting-Commissioner's decision denying disability benefits is **AFFIRMED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order upon the parties to this action.

**SO ORDERED**.

Date: June 9, 2017
Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge